**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        slitteral@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL GALARSA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>    v.<br><br>ASTRAL HEALTH & BEAUTY, INC. d/b/a PUR COSMETICS<br><br>                  Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rachel Galarsa (referred to as "Plaintiff") brings this action on behalf of herself, and all others similarly situated against Astral Health & Beauty, Inc. d/b/a PUR Cosmetics (referred to as "Defendant").   Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which is based on personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings this Class action lawsuit on behalf of herself and similarly situated consumers ("Class Members") who purchased for personal, family, or household use, Defendant's PUR Fully Charged Mascara (referred to as the "Product"), which is unfit for its intended use because it contains unsafe per-and polyfluoroalkyl substances ("PFAS").[1]   The Product is formulated, designed, manufactured, advertised, distributed, and sold by Defendant or its agents to consumers, including Plaintiff, across the United States, including in California.

2.      PFAS are a group of synthetic chemicals known to be harmful to both humans and the environment.   Because PFAS persist and accumulate over time, they are harmful even at very low levels.   Because PFAS contain the presence of perfluoroalkyl moieties, they are resistant to environmental and metabolic degradation.   Research indicates that the high persistence of PFAS means that increasing concentrations will result in increased exposures and therefore increased probabilities for known and unknown health effects.   Indeed, PFAS have been shown to have a number of toxicological effects in laboratory studies and have been associated with thyroid disorders, immunotoxic effects, and various cancers in epidemiology studies.

3.      The Centers for Disease Control and Prevention ("CDC") has outlined a host of health effects associated with PFAS exposure, including cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease.

4.      Despite Defendant's representations that the Product is suitable for use, independent research commissioned by Plaintiff's Counsel and performed at Eurofins Lancaster Laboratories, an

---

[1] Discovery may reveal that additional of Defendant's products are within the scope of this Complaint.   Accordingly, Plaintiff reserves the right to include additional cosmetic items identified through the course of discovery, including across brands and cosmetic applications.

internationally renowned laboratory, revealed that the Products contain named PFAS that are known to harm human health, including Perfluorododecanesulfonic acid ("PFDoS") and Perfluorohexadecanoic acid ("PFHxDA").

5.      These findings are particularly worrisome in the context of Defendant's packaging which describes the Product to consumers but makes no mention of the existence of PFAS.  Indeed, none of the Product's packaging mention a single PFAS, including in the ingredients list.



6.      Even more disconcerting, Defendant has built its reputation leading consumers to believe that their Products are free of such toxic, harmful chemicals.  As the image below demonstrates, this misleading branding effort begins with the name "PUR."

## BEAUTY

### —PÜR AND SIMPLE.

Since the brand's inception in 2002, PÜR has redefined clean beauty with one mission in mind—to offer, PÜR Beauties good-for-you products that deliver both immediate and long-term results.

7.      Defendant leads consumers to believe that it has "redefined clean beauty" with "good-for-you products."  These statements are indisputably false given the presence of PFAS in the Products.

8.      Nonetheless, Defendant continues to affirmatively misrepresent and omit material information concerning the Product.  For example, directly on Defendant's website, Defendant promotes a review, describing the Product as "toxic free."



9. Defendant also uses terms directly on its website such as "fight the hair follicle aging process," "conditioning," "help prevent premature fall out," and "nourishes," as set out below.

**Transformative Ingredients:**

**A powerful blend of Biotin and Peptides** | Help fight the hair follicle aging process by conditioning lashes to help prevent premature fall out

**Carnauba Wax** | Separates and sets each lash for all day length, volume, and curl

**Vitamin B5, also known as Panthenol** | Nourishes lashes, giving them more flexibility to help maintain longer-looking lashes

10. Defendant makes further similar representations directly on its website, describing the Product as "free of parabens," suitable for those with a "vegan diet," as well as those who have "gluten sensitivities." These representations are included below.



11. These representations further Defendant's image as a leader in "clean beauty," and serve to assure reasonable consumers like Plaintiff, who saw the following substantially similar

representations directly on the Product's packaging, that the Product crafted in a manner that is not incompatible with human health.



12.    Even worse, Defendant affirmatively encourages consumers like Plaintiff to place the Products close to their eyes, ignoring the health repercussions of doing so.  For instance, directly on Defendant's website, Defendant shows a person applying the Products within millimeters of the eye.



13.    Defendant extends such representations directly to the packaging of the Products, encouraging consumers to "plac[e] the brush wand at the base of the lashes, then hold for a few moments to set."  Plaintiff encountered these representations at the time of purchase and during her respective buyer's remorse period.

///

///

///

1
2
3
4
5



6    14.    All told, Plaintiff was aware of PUR's reputation as a leader in "clean beauty", and

7  believed she was supporting a company that did not use toxic chemicals in the Products.  Plaintiff

8  would not have purchased Defendant's Products on the same terms had she known that Defendant's

9  Products are made with PFAS, and pose a significant health risk to unsuspecting consumers.

10   15.    Accordingly, Plaintiff brings her claims against Defendant individually and on behalf

11  of a class of all others similarly situated for (1) violation of California's Unfair Competition Law,

12  Cal. Bus. & Prof. Code § 17200, *et seq*.; (2) violation of the Consumers Legal Remedies Act, Cal.

13  Civ. Code § 1750, et seq.; (3) breach of the Implied Warranty under Song-Beverly Consumer

14  Warranty Act, Cal. Civ. Code § 1792, et seq.; and California Commercial Code § 2314; (4) violation

15  of California's False Advertising Law, Cal. Bus. & Prof. Code § 17200, et seq.; (5) Fraud; (6)

16  Constructive Fraud; (7) Fraudulent Inducement; (8) Fraudulent Omission or Concealment; (9)

17  Fraudulent Misrepresentation; (10) Negligent Misrepresentation; (11) Quasi-Contract / Unjust

18  Enrichment; (12) Breach of Express Warranty; (13) violation of the Magnuson-Moss Warranty Act,

19  15 U.S.C. §§ 2301, et seq.; and (14) Negligent Failure to Warn.

20                                  **PARTIES**

21   16.    Plaintiff Rachel Galarsa is a natural person and citizen of California who resides in

22  Newark, California.  In or around March 2022 Ms. Galarsa purchased the Product from a Macy's

23  located in Newark, California.  Ms. Galarsa was familiar with Defendant's reputation as a leader in

24  "clean beauty" and understood based on Defendant's branding as PUR that the Products were clean,

25  safe, non-toxic, and not detrimental to human health.  Ms. Galarsa's impression of Defendant in this

26  regard was furthered by her reliance on Defendant's packaging.  As discussed above, Defendant's

27  packaging makes no mention of PFAS in the Products.  Instead, the packaging makes several

28  representations concerning the "cleanness" of the Products, such as "vegan friendly" and "gluten

free." Ms. Galarsa picked up the Product, held it in her hand, saw that she could apply the Product directly in the vicinity of her eyes, and did not suspect that Defendant's Product could not in fact safely be used in such a manner. In turn, Ms. Galarsa reasonably relied on these representations and warranties in deciding to purchase the Product, and these representations were part of the basis of the bargain in that she would not have purchased the Product, or would not have purchased it on the same terms, if the true facts had been known. As a direct result of Defendant's material misrepresentations and omissions, Ms. Galarsa suffered and continues to suffer, economic injuries.

17.    Ms. Galarsa remains interested in purchasing clean and safe cosmetics from Defendant. However, Plaintiff is unable to determine if the Products are actually clean and safe for use. Plaintiff understands that the composition of the Products may change over time. But as long as Defendant may market the Products as clean and safe for use when the Products are not clean and not safe for use, then when presented with false or misleading information when shopping, she will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's Products. Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that Products marketed and labeled as safe for use, are, in fact, safe for use.

18.    Defendant Astral Health & Beauty, Inc. is a Delaware corporation with its principal place of business located in Atlanta, Georgia.

19.    Plaintiff reserves the right to amend this Complaint and add different products and additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of different states than Defendant. This

Court has personal jurisdiction over Defendant because Defendant is licensed to do business in California, has designated agents for services of process in California, and otherwise conducts substantial business in California.

21.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District and Plaintiff saw and heard Defendant's advertisements in this District.

## FACTUAL ALLEGATIONS

### A.     Beauty Products and Consumer Preferences

23.     Awareness of, and an inclination toward, safe products is strongly guiding consumer choices.  One survey, for instance, found that "[w]hen asked to choose the top three factors they prioritize when deciding between products, the majority of consumers surveyed said they prioritize the health/safety of products (71%) and products free of certain toxic chemicals (70%)." Significantly, "[t]hese factors won out over convenience, country of origin, environmental impact, product performance, price and social/human rights/labor impact."

24.     Additionally, "[t]he majority of shoppers . . . are willing to spend more for a product they know if safer, with 42% willing to spend 5-15% more, 36% willing to spend 16-25% more, and 17% willing to spend 1-5% more."

25.     For these reasons, several companies, including Defendant, have expanded their marketing efforts to attract consumers into purchasing cosmetics branded as safe and clean.  Indeed, "the clean beauty market is estimated to reach $22 billion by 2024," according to Statista Research.

26.     Thus, there is enormous incentive for companies such as Defendant to market their products as safe and clean.  Indeed, as discussed above, Defendant has repeatedly and pervasively touted these considerations as reasons to purchase the Products over competitors.

27.     Despite their marketing, advertising, and labeling of the Products which serve to assure reasonable consumers like Plaintiff that the Products are clean, compatible with human health, and safe for use, Defendant's Products of nothing of the sort.

**B.      Defendant's Products Contain Harmful PFAS**

28.     Plaintiff's claims follow on the heels of the groundbreaking research conducted at the University of Notre Dame and later published in the Environmental Science & Technology Letters in June 2021.   This research, entitled "Fluorinated Compounds in North American Cosmetics," sought to assess the potential health and environmental risk of PFAS in cosmetics, analyzing more than 231 cosmetic products purchased in the United States and Canada.   Defendant's Products were included in that study.

29.     The researchers explained that "PFAS are used in cosmetics due to their properties such as hydrophobicity and film-forming ability, which are thought to increase product wear, durability, and spreadability."

30.     But PFAS are not necessary for these intended outcomes.   Indeed, numerous of Defendant's competitors' products have been tested by researchers and found to contain no detectable levels of organic fluorine, which indicates the existence of PFAS.   Accordingly, Defendant would have had knowledge that they could produce the Products without PFAS.

31.     Nonetheless, Defendant proceeded to sell the Products which contain PFAS, failing to inform consumers that they were needlessly exposing themselves to PFAS.

32.     In July of 2022, Plaintiff through Counsel commissioned independent testing of the Products at Eurofins Lancaster Laboratories.

33.     The results revealed that the Products contain harmful PFAS, including Perfluorododecanesulfonic acid ("PFDoS") and Perfluorohexadecanoic acid ("PFHxDA").

34.     The test results were subsequently reviewed by Plaintiff's expert who earned his Ph.D. in Biochemistry and Food Science from an esteemed university and has over 35 years of experience studying ingredients and toxic substances.   Plaintiff's expert determined that the results were credible and that the PFAS that exist in the Products are disconcerting.

35.     And for good reason.  Exposure to these substances leads to cancer, harm to the immune system, hormone disruption, harm to fetal growth and child development, and harm to the liver, among other health effects.

36.     There are multiple avenues for these PFAS to invade the body, including through ingestion, inhalation, and skin absorption.

37.     As the below figure—utilized by the researchers at Notre Dame—reveals, PFAS in cosmetics may be introduced into the human body through multiple avenues:



38.     Exposure also occurs through the skin, which is the body's largest organ, subjecting it to absorption, even when the products are used carefully to avoid the eyes, nose, or mouth.

39.     This is particularly concerning in the context of the Products since they constitute a "leave-on product[], i.e. [they are] intended to stay on the skin all day, [and result in] a consequently greater exposure expected compared to other product types that are intended to be washed off immediately after application ('rinse-off' products)."

40.     Chemicals from mascara can enter highly sensitive areas through normal use.

41.     For example, mascara can be easily absorbed through the tear duct and enter the bloodstream.

42.     Additionally, the oil in human skin can make the pigment of the mascara transfer onto skin, even after the mascara is dry.  Even if skin is not naturally oily, sweat and heat can cause mascara to run.

43.     In total, this research demonstrates that the risk of severe health complications arising from exposure to the PFAS in Defendant's Products is both credible and substantial.

**C.**     **Defendant's Marketing and Sale of the Products Violate Federal Law**

44.     Section 5(a) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 52, prohibits the dissemination of any false advertisements in order affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, or cosmetics.  For the purposes of Section 12 of the FTCA, 15 U.S.C. § 52, the Product is a "cosmetic[] as defined in Section 15(e) of the FTCA.  15 U.S.C. § 55(e).  Under this provision, Defendant and other companies must have a reasonable basis for making objective product claims.

45.     The Federal Food, Drug, and Cosmetic Act ("FDCA"), as well as subsequent regulations, which are fully incorporated into California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875, et seq. and imposes identical requirements—prohibits "[t]he introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded."  21 U.S.C. § 331(a).

46.     Defendant has represented that the ingredients in their Products are safe, omitting and failing to warn of the PFAS in the Product.  However, these representations are false, deceptive, and misleading, as the Products actually contain PFAS.  The making of such misrepresentations and omissions by Defendant constitutes a deceptive act or practice and the making of false advertisements in violation of Section 5(a) of 12 of the FTCA, 15 U.S.C. §§ 45(a) and 52(b).

47.     As alleged herein, Defendant has violated and continues to violate the FDCA and consumer protection statutes.

48.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful sale of the Product.  Indeed, no reasonable consumer, including Plaintiff, would have purchased the Products had they known they were adulterated and/or misbranded.

49.     Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the PFAS contamination in the Products.

**D.**     **Defendant's Misrepresentations and Omissions Are Actionable**

50.     Plaintiff and the Class were injured by the full purchase price of the Products because the Products are worthless, as they are marketed as clean and safe for human use when they are not in fact clean and safe for human use.

---

51.     Plaintiff and Class Members bargained for products that are clean and safe for use and were deprived of the basis of their bargain when Defendant sold them Products containing dangerous substances with serious health consequences.

52.     No reasonable consumer would expect that the Products marketed as clean and safe for human use would pose a risk to their health, safety, and well-being, or that it would contain PFAS, which are linked to harmful health effects in humans.  Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Products.

53.     As the Products expose consumers to a substance that pose a risk to consumers' health, the Products are not clean, safe, or fit for use by humans.  Plaintiff and the Class are further entitled to damages for the injury sustained in being exposed to PFAS, damages related to Defendant's conduct, and injunctive relief.

54.     Moreover, because these facts relate to a critical safety-related deficiency in the Products, Defendant was under a continuous duty to disclose to Plaintiff and Class Members the true standard, quality, and grade of the Products and to disclose that the Products contained substances known to have adverse health effects.  Nonetheless, Defendant concealed and misrepresented this information, as discussed herein.

55.     Although Defendant is in the best position to know what content they placed in their Products during the relevant timeframe, and the knowledge that Defendant had regarding the presence of PFAS, and their failure to warn consumers that the Products contained PFAS, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

56.     **WHO**:  Defendant made material misrepresentations and omissions of fact about the Products through its labeling, marketing, and advertising which shows that the Products are clean and safe for human use.  These representations constitute omitted and misrepresented material information regarding harmful chemicals.

57.     **WHAT**:  Defendant's conduct here was, and continues to be, fraudulent because it misrepresented and omitted and concealed that the Products contain substances—PFAS—that are widely known to have significant health repercussions.  Thus, Defendant's conduct deceived Plaintiff

and Class Members into believing that the Products are clean and safe for human use when they are not.  Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet they continued to pervasively market the Product in this manner in the U.S. market.

58.   **WHEN**:  Defendant made material misrepresentations and omissions during the putative class periods, including prior to and at the time Plaintiff and Class Members purchased the Products, despite their knowledge that the Products contain PFAS, a harmful substance with known adverse health effects.

59.   **WHERE**:  Defendant's marketing message was uniform and pervasive, carried through material misrepresentations and omissions on the labeling of the Products' packaging, website, and through marketing materials.

60.   **HOW**:  Defendant made material misrepresentations and/or failed to disclose material facts regarding the Products, including the presence of PFAS in the Products.

61.   **WHY**:  Defendant made the material misrepresentations and omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Products, the effect of which was that Defendant profited by selling the Products to hundreds of thousands of consumers.

62.   **INJURY**:  Plaintiff and Class Members purchased, paid a premium (up to the full-price), or otherwise paid more for the Products when they otherwise would not have absent Defendant's omissions and had they known the true facts.

## **TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS**

63.   Defendant has had actual knowledge for years that the Product contains harmful chemicals such as PFAS.

64.   Although Defendant was aware of the deception in their labeling given the inclusion of PFAS in the Product despite claims of the Products' safety, it took no steps to warn Plaintiff or Class Members of their inclusion in the Products or the related risks.

65.   Despite its knowledge, Defendant has fraudulently misrepresented and omitted the risks of the Products and instead encourage consumers to use the Products in a manner that is

incompatible with their safety.  Defendant had a duty to disclose the true nature and quality of the Products and to disclose the health and safety risks associated with the Products.

66.     Defendant made, and continues to make, affirmative misrepresentations and omissions to consumers, to promote sales of the Product, including that the Products are safe and clean.

67.     Defendant concealed material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Products.  Defendant's concealment was knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members.   Accordingly, Plaintiff and Class Members reasonably relied upon Defendant's concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

68.     The PFAS included in the formulation, design and/or manufacture of the Products were not reasonably detectible to Plaintiff and Class Members.

69.     At all times, Defendant actively and intentionally concealed the existence of the PFAS and failed to inform Plaintiff or Class Members of the existence of PFAS.  Accordingly, Plaintiff and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

70.     Defendant's statements, words, and acts were made for the purpose of suppressing the truth that the Product contained harmful chemicals and that the Products are not clean or safe to use.

71.     Defendant concealed and/or misrepresented the PFAS for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

72.     As a result of Defendant's active concealment of the PFAS and/or failure to inform Plaintiff and Class Members of the PFAS, any and all applicable statute of limitations otherwise applicable to the allegations herein have been tolled.  Furthermore, Defendant is estopped from relying on any statute of limitations in light of their active concealment of the unsafe nature of the Products.

73.     Further, the causes of action alleged herein did not accrue until Plaintiff and Class Members discovered that the Product PFAS, which, at the very earliest, would have been July 2022.

1  Plaintiff and Class Members had no realistic ability to discern that the Products contained various

2  PFAS until after the Notre Dame study and the independent testing which they commissioned

3  through Plaintiff's Counsel.  Plaintiff and Class Members were hampered in their ability to discover

4  their causes of action because of Defendant's active concealment of the existence of PFAS in the

5  Products and of the Products' true nature.

6  **CLASS ALLEGATIONS**

7  74.     ***Class Definition.***       Plaintiff brings this action on behalf of a class of similarly

8  situated individuals, defined as all persons in the United States who, within the applicable statute of

9  limitations period, up to and including the date of final judgement in this action, purchased any of

10  Defendant's Products at issue (the "Class")

11  (a)     ***California Subclass.***  Plaintiff also seek to represent a subclass of all Class

12  members who within the applicable statutes of limitations period, up to and including the date of

13  final judgement in this action, purchased any of the Products at issue in California (the "California

14  Subclass").

15  75.     Excluded from the Class and Subclasses are persons who made such purchase for

16  purpose of resale, Defendant and any entities in which Defendant has a controlling interest,

17  Defendant's agents and employees, the judge to whom this action is assigned, and members of the

18  judge's staff, and the judge's immediate family.

19  76.     Plaintiff reserves the right to amend the definition of the Class and Subclass if

20  discovery or further investigation reveals that the Class or Subclass should be expanded or otherwise

21  modified.

22  77.     ***Numerosity.***  Members of the Class and Subclass are so numerous that their

23  individual joinder herein is impracticable.  On information and belief, members of the Class and

24  Subclass number in the millions.  The precise number of Class members and their identities are

25  unknown to Plaintiff at this time but may be determined though discovery.  Class members may be

26  notified of the pendency of this action by mail and/or publications through the distribution records

27  of Defendant and third-party retailers and vendors.

28

78. ***Commonality and Predominance.*** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include but are not limited to: whether Defendant warranted the Products as clean and safe for use; whether Defendant breached these warranties; and whether Defendant committed the statutory and common law violations alleged against them herein by doing so.

79. ***Typicality.*** The claims of the named Plaintiff are typical of the claims of the Class in that Plaintiff purchased one of Defendant's Products in reliance on the representations and warranties described above and suffered a loss as a result of that purchase.

80. ***Adequacy.*** Plaintiff is an adequate representative of the Class and respective Subclass because her interests do not conflict with the interests of the Class and Subclass members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of the Class and Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

81. ***Superiority.*** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense of all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issue will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.

82. Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class and Subclass as a whole.

83.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and Subclass and will likely retain the benefits of its wrongdoing.

84.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

<u>COUNT I</u>
**(Violation of California's Unfair Competition Law,
Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

85.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

86.     Plaintiff brings this claim individually and on behalf of the Class against Defendant under California law.

87.     California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice."  For the reasons discussed above, Defendant has engaged in unlawful, unfair, and fraudulent business acts or practices in violation of California Business & Professions Code § 17200.

88.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class, by engaging in unlawful, fraudulent, and unfair conduct.

89.     Defendant has violated the UCL's proscription against engaging in **Unlawful Business Practices** as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9) as alleged below, violations of California's Song-Beverly Act, and violations of California's False Advertising Law, in addition to breaches of warranty and violations of common law.

90.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.  In addition, Defendant has committed unlawful business practices by, inter alia, making the misrepresentations and omissions of material facts, as set forth more fully herein, and violating the common law.

91.     Plaintiff and the Class Members reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

92.     Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**.  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

93.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

94.     Defendant has further violated the UCL's proscription against engaging in **Fraudulent Business Practices**.  Defendant's claims, nondisclosures and misleading statements with respect to the Products, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

95.     Plaintiff and the other Class Members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products.

96.     There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the true nature of the Products.

97.     Plaintiff and the other Class Members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

98.     The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Class Members.

99.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other Class Members; (b) disgorge all revenues obtained

1    as a result of violations of the UCL; and (c) pay Plaintiff's and Class members' attorneys' fees and

2    costs.

3         100.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at

4    law, if, for instance damages resulting from her purchase of the Products is determined to be an

5    amount less than the premium price of the Product.  Without compensation for the full premium

6    price of the Products, Plaintiff would be left without the parity in purchasing power to which they

7    are entitled.

8         101.    Injunctive relief is also appropriate, and indeed necessary, to require Defendant to

9    provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can

10   reasonably rely on Defendant's representations as well of those of Defendant's competitors who may

11   then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

12        102.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient

13   than other legal remedies requested herein.  The return of the full premium price, and an injunction

14   requiring either (1) adequate disclosure of PFAS in the Product and its effects; or (2) the removal of

15   such chemicals from the Product, will ensure that Plaintiff is in the same place she would have been

16   in had Defendant's wrongful conduct not occurred, i.e., the position to make an informed decision

17   about the purchase of the Products absent misrepresentations and omissions with the full purchase

18   price or price premium at their disposal.

### COUNT II
**(Violation of California's Consumers Legal Remedies Act ("CLRA"),
California Civil Code § 1750, *et seq.*)**

103.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

104.    Plaintiff brings this claim individually and on behalf of the Class against Defendant
under California law.

105.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have
sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not
have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she
does not have."

106.    Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

107.    Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

108.    Defendant violated Civil Code § 1770(a)(5), (a)(7), and (a)(9) by holding out the Products as clean and safe for human use, when in fact the Products are not clean and are not safe for use.

109.    The Products are not safe because they contain PFAS, harmful contaminants with known adverse health effects.

110.    Defendant has exclusive or superior knowledge of the Products' composition and the associated health concerns, which was not known to Plaintiff or Class Members.

111.    Plaintiff and Class Members have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid, and were unknowingly exposed to a significant and substantial health risk.

112.    On September 13, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of all other similarly situated purchasers.  Defendant refused to correct their practices.  Accordingly, Plaintiff, individually, and on behalf of the proposed Class, seek, in addition to injunctive relief, monetary damages from Defendant as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

113.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law, if, for instance damages resulting from their purchase of the Products is determined to be an amount less than the premium price of the Products.  Without compensation for the full premium

price of the Products, Plaintiff would be left without the parity in purchasing power to which she is entitled.

114.     Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can reasonably rely on Defendant's representations as well of those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

115.     Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosure of PFAS in the Products and their effects; or (2) the removal of such chemicals from the Products, will ensure that Plaintiff is in the same place she would have been in had Defendant's wrongful conduct not occurred, i.e., the position to make an informed decision about the purchase of the Products absent misrepresentations and omissions with the full purchase price at their disposal.

## COUNT III
### (Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code § 1790, *et seq*. and California Commercial Code § 2314)

116.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

117.     Plaintiff brings this claim individually and on behalf of the Class against Defendant under California law.

118.     Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790. *et seq.*, and California Commercial Code § 2314, every sale of consumer goods in the State of California is accompanied by both a manufacturer's and retailer seller's implied warranty that the goods are merchantable, as defined in that Act.  In addition, every sale of consumer goods in California is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

119.    The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

120.    Plaintiff and the Class Members who purchased the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

121.    Defendant is in the business of manufacturing, assembling, and/or producing the Products and/or selling the Products to retail buyers, and therefore are "manufacturer[s]" and "seller[s]" within the meaning of Cal. Civ. Code § 1791.

122.    Defendant impliedly warranted to retailer buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements.  Defendant breached these implied warranties because the Products were not clean and instead unsafe for human use.  Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

123.    Plaintiff and Class Members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

124.    The Products were not altered by Plaintiff or the Class Members.

125.    The Products were defective at the time of sale when they were in the exclusive control of Defendant.  The issues as described in this complaint were latent in the product and not reasonably discoverable at the time of sale.

126.    Defendant knew that the Products would be purchased and used without additional testing by Plaintiff and Class Members.

127.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the Products if they knew the truth about the Products, namely, that they were unfit for use and posed a significant safety risk.

128.    Plaintiff and the Class seek compensatory damages, attorneys' fees, costs, and any other just and proper relief available under law.

<u>**COUNT IV**</u>
**(Violation of California's False Advertising Law,
Cal. Bus. & Prof. Code § 17500, *et seq.*)**

129.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

130.    Plaintiff brings this claim individually and on behalf of Class against Defendant under California law.

131.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Class Members and the public.  As described above, and throughout this Complaint, Defendant misrepresented the Products as clean and safe for human use, in fact, the Products were not clean and not safe for human use.

132.    By its actions, Defendant disseminated uniform advertising regarding the Products to and across California.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*.  Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

133.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose that the Products contain substances that pose a significant risk to the health and well-being of Plaintiff and the Class Members.

134.    Defendant continues to misrepresent to consumers that the Products are clean and safe for use.  However, as described, that is not the case.

135.    In making and disseminating these statements, Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law.  Plaintiff and other Class Members based their purchasing decisions on Defendant's misrepresentation and omission of material facts.  The revenue attributable to the Products sold in those false and misleading advertisements likely amounts to tens of millions of dollars.  Plaintiff and Class Members were injured in fact and lost money and property as a result.

136.     The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq*.

137.     As a result of Defendant's wrongful conduct, Plaintiff and Class Members lost money in an amount to be proven at trial.  Plaintiff and Class Members are therefore entitled to restitution as appropriate for this cause of action.

138.     Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

139.     Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law, if, for instance damages resulting from her purchase of the Products is determined to be an amount less than the premium price of the Products.  Without compensation for the full premium price of the Products, Plaintiff would be left without the parity in purchasing power to which she is entitled.

140.     Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can reasonably rely on Defendant's representations as well of those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

141.     Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosure of the PFAS in the Products and its effects; or (2) the removal of such chemicals from the Products, will ensure that Plaintiff is in the same place she would have been in had Defendant's wrongful conduct not occurred, i.e., the position to make an informed decision about the purchase of the Products absent omissions and misrepresentations with the full purchase price at their disposal.

//

//

## COUNT V
### (Fraud)

142. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

143. Plaintiff brings this claim individually and on behalf of the Class under California law.

144. At the time Plaintiff and Class Members purchased the Products, Defendant did not disclose, but instead concealed and misrepresented, the Products as clean and safe for human use.

145. Defendant also knew that its omissions and misrepresentations regarding the Products were material, and that a reasonable consumer would rely upon Defendant's omissions and misrepresentations in making purchasing decisions.

146. Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Products.

147. Plaintiff and Class Members would have been reasonable in relying on Defendant's misrepresentations and omissions in making their purchasing decisions.

148. Plaintiff and Class Members had a right to rely upon Defendant's misrepresentations and omissions as Defendant maintained monopolistic control over knowledge of the true nature and quality of the Products.

149. Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's omissions, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT VI
### (Constructive Fraud)

150. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

151. Plaintiff brings this claim individually and on behalf of the Class under California law.

152. At the time Plaintiff and Class Members purchased the Products, Defendant did not disclose, but instead concealed and misrepresented, the Products as discussed herein.

153. Defendant affirmatively misrepresented the Products, giving the Products the appearance of a product that is indeed safe for use.

154. Defendant also knew that their omissions and misrepresentations regarding the Product were material, and that a reasonable consumer would rely upon their representations (and corresponding omissions) in making purchasing decisions.

155. Defendant had an obligation not to omit or misrepresent the Product because in addition to the fact that the Product pertained to matters of safety: (a) it was in the sole possession of such information; (b) it made partial representations regarding the quality of the Products; (c) Plaintiff and the Class Members relied upon Defendant to make full disclosures based upon the relationship between Plaintiff and Class Members, who relied on Defendant's representations and omissions, and were reasonable in doing so, with the full knowledge of Defendant that it did and would have been reasonable in doing so.

156. Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true quality of the Products.

157. Plaintiff and Class Members would have been reasonable in relying on Defendant's misrepresentations (and corresponding omissions) in making their purchasing decisions.

158. Plaintiff and Class Members had a right to rely upon Defendant's representations (and corresponding omissions) as, in addition to the fact that the issue pertained to safety, Defendant maintained monopolistic control over knowledge of the true quality of the Product, and what information was available regarding the Products.

159. Defendant breached its duty to Plaintiff and Class Members to make full disclosures of the safety of their Products.

160. Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's omissions and misrepresentations, and Defendant breach of its duty, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial.

## COUNT VII
### (Fraudulent Inducement)

161. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

162. Plaintiff brings this claim individually and on behalf of the Class under California law.

163.    Defendant did not disclose, but instead concealed and misrepresented material information about the Products as discussed herein.

164.    Defendant knew, or should have known, that the Products were falsely and misleadingly portrayed, and that knowledge of the safety-related issues discussed throughout was withheld from the consumer public.

165.    Defendant also knew that its omissions and misrepresentations regarding the Products were material, and that a reasonable consumer would rely on Defendant's omissions in making purchasing decision.

166.    Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature and quality of the Products.

167.    Plaintiff and Class Members would have been reasonable in relying on Defendant's omissions in making their purchasing decisions.

168.    Plaintiff and Class Members had a right to rely on Defendant's omissions as Defendant maintained monopolistic / superior control over the Products, and what information was available regarding the Products.

169.    Defendant intended to induce—and did, indeed, induce—Plaintiff and Class Members into purchasing the Products based upon its omissions.

170.    Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's omission, thus causing Plaintiff sand Class Members to sustain actual losses and damages in a sum to be determined at trial.

## COUNT VIII
### (Fraudulent Concealment or Omission)

171.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

172.    Plaintiff brings this claim individually and on behalf of the Class under California law.

173.    At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and selling the Products.

174.   Defendant, acting through its representatives or agents, delivered the Products to its distributors and various other distribution channels.

175.   Defendant willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Products as discussed throughout.

176.   Rather than inform consumers of the truth regarding the Products, Defendant misrepresented the quality of the Products as discussed herein at the time of purchase.

177.   Defendant made these material misrepresentations to boost or maintain sales of the Products, and to falsely assure purchasers of the Products that Defendant is a reputable company and that their Products are safe for use.  The false representations were material to consumers because the omissions played a significant role in the value of the Products purchased.

178.   Plaintiff and Class Members accepted the terms of use, which were silent on the true nature of the Products, as discussed throughout.  Plaintiff and Class Members had no way of knowing Defendant's omissions as to the Products and had no way of knowing that Defendant's omissions were misleading.

179.   Although Defendant had a duty to ensure the safety, completeness, and accuracy of the information regarding the Products, it did not fulfill these duties.  Nor did Defendant fulfill its duty stemming from its incomplete partial representations.

180.   Defendant omitted or concealed material facts partly to pad and protect its profits, as it saw that profits and sales of the Products were essential for its continued growth and to maintain and grow its reputation as a premier designer and vendor of the Products.  Such benefits came at the expense of Plaintiff and Class Members.

181.   Plaintiff and Class Members were unaware of these material omissions, and they would not have acted as they did had they known the truth.  Plaintiff's and class members' actions were justified given Defendant's omissions.  Defendant was in the exclusive / superior control of material facts, and such facts were not widely known to the public.

182.   Due to Defendant's misrepresentations, Plaintiff and Class Members sustained injury due to the purchase of the Products that did not live up to its advertised representations.  Plaintiff and

1   Class Members are entitled to recover full refunds for the Products they purchased due to

2   Defendant's omissions.

3       183.    Defendant's acts were done maliciously, oppressively, deliberately, and with intent

4   to defraud, and in reckless disregard of Plaintiff, and Class Members' rights and well-being, and in

5   part to enrich itself at the expense of consumers.  Defendant's acts were done to gain commercial

6   advantage over competitors, and to drive consumers away from consideration of competing products.

7   Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter

8   such conduct in the future.

## COUNT IX
### (Fraudulent Misrepresentation)

10      184.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

11      185.    Plaintiff brings this claim individually and on behalf of the Class under California

12  law.

13      186.    Defendant falsely represented to Plaintiff and the Class that the Products were safe

14  for use.

15      187.    Defendant intentionally, knowingly, and recklessly made these misrepresentations to

16  induce Plaintiff and the Class to purchase the Products.

17      188.    Defendant knew or should have known that their representations about the Products

18  were false in that the Products are not safe for use nor clean as discussed throughout.  Defendant

19  knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to

20  intentionally mislead consumers, such as Plaintiff and the Class.

21      189.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased the

22  Products to their detriment.  Given the deceptive manner in which Defendant advertised, marketed,

23  represented, and otherwise promoted the Products, Plaintiff's and the Class's reliance on Defendant's

24  misrepresentations was justifiable.

25      190.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have

26  suffered actual damages in that they would not have purchased the Products at all had they known

27

28

of the safety risks associated with the Products and that they does not conform to the Products' labels, packaging, advertising, and statements.

191.    Plaintiff and the Class seek actual damages, attorneys' fees, costs, and other such relief the Court deems proper.

**COUNT X**
**(Negligent Misrepresentation)**

192.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

193.    Plaintiff brings this claim individually and on behalf of the Class under California law.

194.    Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the Products.

195.    Defendant breached its duty to Plaintiff and the Class by developing, testing, manufacturing, marketing, detailing, distributing, and selling the Products to Plaintiff and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Defendant and by failing to promptly remove the Products from the marketplace or take other appropriate remedial action.

196.    Defendant knew or should have known that the qualities and characteristics of the Products were not as advertised, marketed, detailed, or otherwise represented or suitable for their intended use and were otherwise not as warranted and represented by Defendant.  Specifically, Defendant knew or should have known that the Products were not clean and not safe for use.

197.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the Products at all had they known that the Products were not safe for use and that the Products do not conform to the Products' labeling, packaging, advertising, and statements.

198.    Plaintiff and the Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available.

//

//

## COUNT XI
### (Quasi-Contract / Unjust Enrichment)

199.   Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

200.   Plaintiff brings this claim individually and on behalf of the Class under California law.

201.   To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

202.   Plaintiff and Class Members conferred benefits on Defendant by purchasing the Products.

203.   Defendant was unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products.  Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented and failed to disclose that the Products were unfit for their intended purpose as they were not clean and not safe for use.  These omissions and misrepresentations caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts were known.

204.   Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

205.   Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law, if, for instance damages resulting from his purchase of the Products is determined to be an amount less than the premium price of the Products.  Without compensation for the full premium price of the Products, Plaintiff would be left without the parity in purchasing power to which they are entitled.

206.   Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price will ensure that Plaintiff is in the same place she would have been in had Defendant's wrongful conduct not occurred, i.e., the position to make an informed decision about the purchase of the Products absent omissions and misrepresentations with the full purchase price at his disposal.

1

2

## COUNT XII
### (Breach of Express Warranty)

207.   Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

208.   Plaintiff brings this claim individually and on behalf of the Class under California law.

209.   Plaintiff and Class Members formed a contract with Defendant at the time Plaintiff and Class Members purchased the Product.

210.   The terms of the contract include the promises and affirmations of fact made by Defendant on the Products packaging and through marketing and advertising, as described above.

211.   This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and Class Members.

212.   As set forth above, Defendant purport through their advertising, labeling, marketing, and packaging, to create an express warranty that the Product is clean and safe for its intended use.

213.   Plaintiff and Class Members performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

214.   Defendant breached express warranties about the Products and their qualities because despite Defendant's warranties that the Products are clean and safe for use, the Products are objectively not in fact clean and safe for use.  Thus, the Products did not confirm to Defendant's affirmations and promises described above.

215.   Plaintiff and each Class Member would not have purchased the Products had they known the true nature of the Products.

216.   As a result of Defendant's breach of warranty, Plaintiff and each Class Member suffered and continues to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorney's fees, as allowed by law.

## COUNT XIII
### (Violation of the Magnuson-Moss Warranty Act,
### 15 U.S.C. §§ 2301, *et seq.*)

217.   Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    31

218.    Plaintiff brings this claim individually and on behalf of the Class under California law.

219.    The Products are consumer products as defined in 15 U.S.C. § 2301(1).

220.    Plaintiff and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

221.    Defendant is a supplier and warrantor as defined in 15 U.S.C § 2301(4) and (5).

222.    In connection with the marketing and sale of the Products, Defendant impliedly warranted that the Products was fit for use and expressly warranted that the Products were clean and safe. However, as described throughout, that is not true.

223.    By reason of Defendant's breach of warranties, Defendant violated the statutory rights due to Plaintiff and the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C §§ 2301, *et seq.*, thereby damaging Plaintiff and the Class.

224.    On September 13, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a pre-suit notice letter, apprising Defendant of its breach of warranties.  The letter was sent via certified mail, return receipt requested.  The letter stated that it was sent on behalf of all other similarly situated purchasers.  Defendant did not make any changes to the Products, and did not pull the Products from the marketplace.

225.    Plaintiff and Class Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the Product.

## COUNT XIV
### (Negligent Failure to Warn)

226.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

227.    Plaintiff brings this claim individually and on behalf of the Class under California law.

228.    At all relevant times, Defendant was responsible for designing, constructing, testing, manufacturing, inspecting, distributing, labeling, marketing, advertising, and/or selling the Products. At all relevant times, it was reasonably foreseeable by Defendant that the use of the Products in their

intended manner involved substantial risk of injury and was unreasonably dangerous to Plaintiff and the Class as the ultimate users of the Products.

229.   At all relevant times, Defendant knew or had reason to know of the risk of injury and the resultant harm that the Products posed to Plaintiff and Class Members, as the Defect existed at the time of its design, construction, manufacture, inspection, distribution, labeling, marketing, advertising, and/or sale, as described herein.

230.   Defendant as the designer, manufacturer, tester, distributor, marketer, advertiser, and/or seller of the Products, had a duty to warn Plaintiff and the Class of all dangers associated with the intended use of the Products.

231.   At minimum, the duty arose for Defendant to warn consumers that use of the Products could result in injury and was unreasonably dangerous.

232.   Defendant was negligent and breached its duty of care by negligently failing to provide warnings to purchasers and users of the Products, including Plaintiff and the Class, regarding the true nature of the Product, its risks, and potential dangers.

233.   Defendant was negligent and breached its duty of care by concealing the risks of and failing to warn consumers that the Products contain PFAS known to cause adverse health effects in humans.

234.   Defendant knew, or through the exercise of reasonable care, should have known of the inherent Defect and resulting dangers associated with using the Products as described herein, and knew that Plaintiff and Class Members could not reasonably be aware of those risks.  Defendant failed to exercise reasonable care in providing Plaintiff and the Class with adequate warnings.

235.   As a direct and proximate result of Defendant's failure to adequately warn consumers that the use of the Product, including its intended use, could cause and has caused injuries and other damages, Plaintiff and the Class have suffered damages, as described herein.  Plaintiff also requests medical monitoring as a means to safeguard their health and mitigate any damages for future medical treatment.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

Judgment against Defendant, as follows:

(a)    For an order certifying the Class under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff, the Class on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper;

(h)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  November 9, 2022        **BURSOR & FISHER, P.A**.

By:    /s/ *L. Timothy Fisher*
          L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        slitteral@bursor.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff. Plaintiff Galarsa resides in Newark, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California, as Plaintiff purchased the Products within this District.  Additionally, Defendant advertised, marketed, manufactured, distributed, and/or sold the Products at issue to Plaintiff in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 9th day of November, 2022.

> */s/ L. Timothy Fisher*
> L. Timothy Fisher